**DR. SALSBURY'S LABORATORIES**

v.

**I. D. RUSSELL CO. LABORA-
TORIES et al.**

No. 8186.

United States District Court,
W. D. Missouri, W. D.

Sept. 8, 1953.

Thomas E. Scofield, Kansas City, Mo.,
for plaintiff.

Gage, Hillix & Phelps, Kansas City,
Mo., for defendants.

DUNCAN, Chief Judge.

Plaintiff instituted this suit in this court alleging that it is the owner of Letters Patent No. 2,450,866 for Poultry Treatment Composition, and that the defendants are making, using and selling Poultry Treatment Composition known as "Korum" a liquid concentrate, and one known as "Zuco" a dry tablet product, and that the sale of such products and the furnishing of instructions as to their use, constitute an infringment of plaintiff's patent.

It is further alleged that on September 11, 1951, 97 F.Supp. 695, this court held plaintiff's patent valid and infringed by defendants' manufacture and sale of "Korum" and "Zuco" and granted an injunction, awarded damages, costs and attorneys' fees against the defendants.

It is further alleged that in the suit aforesaid, the defendants pleaded misuse of the plaintiff's patent, and that this court held that plaintiff had not misused the patent.

It is further alleged that on appeal, the Court of Appeals for the Eighth Circuit, 198 F.2d 473 (one judge dissenting) in an oinion dated August 5, 1952 reversed the judgment for the plaintiff solely on the ground that this court "erred in not finding misuse of said patent," without passing on the issues of validity or infringement although requested to do so by the defendants, and also denied defendants' petition for re-hearing on the issue of the validity of said patent.

It is further alleged that subsequent to the termination of the prior litigation, the Congress passed on Act entitled "An Act to revise and codify the laws relating

to patents and the Patent Office, and to enact into law title 35 of the United States Code entitled 'Patents'." 66 Stat. 792.

It is further alleged that Section 271 of said revision "changes the controlling legal principles with respect to misuse of patents whereby a different legal rule has applied since January 1, 1953, under which plaintiff is no longer misusing said patent."

It is further alleged that since "January 1, 1953, defendants have committed further acts of infringement by making, using and selling 'Korum' and 'Zuco' " which are violative of plaintiff's patent, and for that the plaintiff seeks an injunction, treble damages, costs, attorneys' fees and other relief.

The defendants have filed an answer denying the infringement of the patent, that the law has been changed, and have also filed a counterclaim seeking damages.

Defendants have also filed Motion for Summary Judgment alleging:

"I. Res judicata. II. Plaintiff is still misusing the patent. III. The reference in the complaint to the findings made in the previous case in favor of plaintiff, which were secured as a part of a program for misusing the patent constitutes unclean hands in this case. IV. Section 271 of Title 35 is unconstitutional if it grants a monopoly or partial monopoly in the unpatented commodity which plaintiff asserts in its complaint it is selling. On this point a three-judge court is requested. V. Plaintiff is in court with unclean hands because it is falsely marking its product with a patent number when the product is unpatented."

Each party has supplied the court with a well prepared brief; oral argument has been heard by the court. Upon oral argument it was admitted that this is not the type of case for the convening of a three-judge court.

It is my impression that none of the questions raised by the defendants is of importance at this time, except that of res judicata and the alleged changing of the law subsequent to the final determination of this case.

If the law has been changed, and as a result of that change a violation since January 1, 1953, the plaintiff would have a cause of action. If there has been no change in the law, or if the change in the law does not affect the cause of action here, then the plaintiff cannot prosecute this action, and the motion must be sustained.

The Act we have to consider here was entitled "An Act to revise and codify the laws relating to patents and the Patent Office, and to enact into law title 35 of the United States Code entitled 'Patents'."

Counsel have submitted to the court statements of the sponsors of the Bill, both in the House and in the Senate, at the time it was passed. It covers the work of a long period by the experts before the Committee on the Judiciary in the House of Representatives. In a prepared statement by Senator McCarran, Chairman of the Judiciary Committee in the Senate, he used this language:

"Into these three categories the existing laws relating to patents have been codified. In view of decisions of the Supreme Court and others as well as trial by practice and error there have been some changes in the law of patents as it now exists and some new terminology used."

At another place in the Congressional proceedings, Senator Saltonstall inquired of Senator McCarran—"Does the bill change the law in any way or only codify the present patent laws?" In answer to that question, Senator McCarran stated: "It codifies the present patent laws."

Apparently the question has not yet been before any court of last resort and a judicial interpretation has therefore not been placed upon it. Clearly from the statement of the framers of the Act it was their intention, whether any change was made in the law or not, to attempt to reconcile the conflicting opin-

ions of the courts with respect to the question of contributory infringement.

In that respect, it seems to me that in the case before us now, we must look to the factual situation and the opinion of the court in that case to determine whether such changes if any, that were made in the law, give a new cause of action to this plaintiff, or whether or not the action of the court in the former case is res judicata.

The factual situation before the court in the former case in regard to plaintiff's patent was that after a long period of research, it was determined that 3-nitro-4 hydroxyphenyl arsenic acid mixed with water within certain concentration range was efficacious in the growth of poultry, and in controlling and preventing Coccidiosis, a disease common to fowls. It was upon this composition that the patent was granted.

The plaintiff sold its product under the name of "Renosal" in tablet form, with directions as to its proper use. The defendants were doing practically the same thing. This court held the patent valid and infringed. The appellate court reversed, holding plaintiff's misuse of the patent. The question of validity was not passed upon.

Unquestionably, and I think it is not in controversy, 3-nitro is not a patented or patentable compound, and may be purchased by any person who desires to purchase it. The sole basis of the patent was the method of its use, and the agent with which it was mixed to bring about the desired composition for oral ingestion. In that case Judge Thomas stated [198 F.2d 475]:

"So, also, is plaintiff's contention without merit that in selling 3-nitro, an unpatented article, under the trade name of Renosal, and by restricting its use, except under the patent by directions on the label, the 3-nitro thus becomes identified with the patent and is no longer a common raw material but that it becomes an entity within the patent. Even if such magical transformation

is true as to Renosal, it does not apply to 3-nitro sold by others."

It is admitted in this case, both in the pleadings, in the briefs and in argument, that the same methods are being used in marketing the composition as existed in the former case. The new law, Section 271, Title 35 U.S.C.A. provides:

"(c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, *and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.*" (Emphasis supplied.)

It would seem in this case that the basis of the appellate court's reversal of this court's judgment was in fact that the plaintiff is selling an unpatentable commodity or "A staple article or commodity of commerce suitable for substantial noninfringing use" as defined in said Section 271. This language is written into subsection (c) as an exception to the general conditions under which recovery may be had.

In other words, the other language of the subsection defines who shall be liable as an infringer, unless and except with respect to the "staple article or commodity of commerce suitable for substantial noninfringing use," and in this case, the article that is being sold is suitable for substantial noninfringing use, is not patentable, and is available to any person who desires to use it for any purpose for which it is suitable.

I am unable to determine that the statutory revision, whether it be a change in the law or a codification, has changed the law as defined by the courts with respect to the use of "a staple article or commodity of commerce suitable for substantial noninfringing use". If I am correct in that construction of the statute, then of

course, the plaintiff has no cause of action.

The Motion for Summary Judgment will therefore be and is hereby sustained.

It Is Therefore Ordered, Adjudged and Decreed by the court, that plaintiff's Complaint be and it is hereby dismissed, and that the defendants have and recover of and from the plaintiff, their costs in this behalf expended.